EL PUEBLO DE PUERTO RICO, peticionario, *v.* TRIBUNAL SU-
PERIOR DE PUERTO RICO, SALA DE CAGUAS, HON. J. VILLA-
RES RODRÍGUEZ, JUEZ, recurrido, JUAN CARRIÓN DÍAZ,
interventor.

*Número:* C–62–46     *Resuelto:* 21 de diciembre de 1962

*J. B. Fernández Badillo, Procurador General, Arturo Estrella, Subprocurador General, y Rodolfo Cruz Contreras, Procurador General Auxiliar,* abogados del peticionario; *José M. Canals,* abogado del interventor.

Sala integrada por el Juez Asociado Señor Belaval como Presidente de Sala y los Jueces Asociados Señores Hernández Matos y Santana Becerra.

EL JUEZ ASOCIADO SEÑOR BELAVAL emitió la opinión del Tribunal.

El interventor Juan Carrión Díaz fue acusado de una infracción a la sección 5–801 de la Ley Núm. 141 de 20 de julio de 1960, porque: "allá en o para el 11 de marzo de 1962, en Caguas, Puerto Rico, que forma parte del Tribunal Superior de Puerto Rico, Sala de Caguas, Puerto Rico, ilegal, voluntaria y maliciosamente conducía y hacía funcionar un vehículo de motor, automóvil marca Pontiac, modelo 1954, tablillas 669–682 por las calles Celis Aguilera y Rafael Cordero en Caguas, Puerto Rico, que son vías públicas, bajo los efectos de bebidas embriagantes.

La disposición legal que se supone violada, dispone: "(a) Será ilegal que cualquier persona bajo los efectos de bebidas embriagantes conduzca o haga funcionar cualquier vehículo de motor... (b) En cualquier proceso criminal por infracción al párrafo (a) que precede, relacionado con el manejo de un vehículo de motor bajo los efectos de bebidas embriagantes, la cantidad de alcohol existente en la sangre del acusado al tiempo en que se cometiere la alegada infracción según surja tal cantidad del análisis químico de su sangre, orina o aliento, constituirá base para las siguientes presunciones: (1) Si al momento del análisis había en la sangre

del acusado cinco (5) centésimas de uno (1) por ciento, o menos, por peso de alcohol se presumirá que el acusado no estaba bajo los efectos de bebidas embriagantes al tiempo de cometer la alegada infracción. (2) Si al momento del análisis se hallare en la sangre del acusado más de cinco (5) centésimas de uno por ciento pero menos de quince (15) centésimas de uno (1) por ciento, por peso de alcohol, tal prueba no constituirá base para presumir que el acusado estaba o no bajo los efectos de bebidas embriagantes, pero dicha prueba podrá ser considerada conjuntamente con otra evidencia competente para determinar la culpabilidad o inocencia del acusado. (3) Si al momento del análisis había en la sangre del acusado quince (15) centésimas de uno (1) por ciento, o más, por peso de alcohol, se presumirá que el acusado estaba bajo los efectos de bebidas embriagantes al tiempo de cometerse la alegada infracción. (4) Las disposiciones de los párrafos (2) y (3) del inciso (b) que precede, no deberán interpretarse en el sentido de que las mismas limitan la presentación de cualquier otra evidencia competente sobre si el acusado estaba o no bajo los efectos de bebidas embriagantes al tiempo de cometerse la alegada infracción."

Relacionada con esta disposición está la sección 5-803, que extractada en sus partes pertinentes, dispone: "(a) se considerará que toda persona que conduzca un vehículo habrá prestado su consentimiento a someterse a un análisis químico de su sangre, aliento u orina, para los fines que se expresan en este artículo. Se entenderá que dicho consentimiento queda prestado para cada uno de los tres análisis estatuídos, pero la persona a quien se requiera para que se someta a dicho análisis químico tendrá derecho a elegir entre someterse al análisis de sangre o al de orina o, allí donde hubiere las facilidades necesarias, al de aliento. (b) Cualquier agente de orden público deberá requerir de cualquier conductor que se someta a cualesquiera de dichos tres análisis químicos, después de haberle detenido y arrestado por tener motivos razonables

para creer que dicha persona conducía o hacía funcionar un vehículo bajo los efectos de bebidas embriagantes, o cuando, habiendo sido detenido por razón de una posible infracción a la ley o a las leyes de servicio público y sus reglamentos, existieren motivos razonables para creer que conducía o hacía funcionar el vehículo bajo los efectos de bebidas embriagantes al tiempo de su detención" ... y la sección 5–804, que extractada en sus partes pertinentes, dispone: "(a) Toda persona detenida por el delito de conducir o hacer funcionar un vehículo bajo los efectos de bebidas embriagantes, podrá rehusar someterse al análisis químico a que se refiere la sec. 1043 [5–803] de este título. (b) Si el detenido se negare a someterse al análisis químico de su aliento o de su sangre u orina, según fuere el caso, el análisis no le será hecho y será conducido ante un magistrado, o ante un fiscal, quien deberá tomar a la mayor brevedad posible una declaración jurada al agente del orden público que practicó la detención, en la cual se deberán expresar los hechos que motivaron la detención, así como el hecho de haber sido requerido el detenido por dicho agente de orden público o por cualquiera de los funcionarios mencionados en el inciso (c) de la sección 1043 [5–803] de este título, a someterse a uno de los análisis químicos estipulados en esta sección y la negativa del detenido a someterse al análisis ofrecido. Si dicho requerimiento hubiere sido hecho por el agente del orden público a cargo inmediato del puesto, distrito o zona de la Policía, donde se efectuó el arresto y no por el agente del orden público que hubiere practicado la detención; deberá tomársele declaración jurada sobre el particular a dicho agente y en la misma deberá declararse el hecho del requerimiento y la negativa del detenido a someterse al referido análisis químico. Cualquiera de los agentes del orden público antes mencionados incluirá en su declaración jurada, además de los extremos antes indicados, el hecho de que explicó al detenido las consecuencias de su negativa. El magistrado o el fiscal en su caso, deberá

también tomar a la mayor brevedad posible declaraciones juradas a cualesquiera otras personas que hubieren presenciado a la persona detenida conduciendo o haciendo funcionar el vehículo de motor bajo los efectos de bebidas embriagantes. En los casos en que un fiscal tome dichas declaraciones, si del examen de los testigos que hubieren declarado resultare que se ha cometido cualquier infracción a las disposiciones de este artículo y que hay causa suficiente para creer que la persona detenida o arrestada es culpable de su perpetración, el fiscal someterá a un magistrado la evidencia que así hubiere obtenido a fin de que éste determine causa probable de la comisión del delito. En todos los casos, si el magistrado considerare que existe causa probable de la comisión del delito por la persona detenida expedirá la orden de arresto de rigor, debiendo ocupar en el acto la licencia de conducir que posea el detenido o arrestado copia de estas declaraciones juradas le serán entregadas al detenido a su requerimiento. (c) En el acto del juicio el magistrado deberá disponer la suspensión de la licencia por un término no mayor de 2 años cuando determine por la evidencia que el acusado no estuvo justificado al negarse a someterse al análisis químico a que se refiere la sección 1043 [5–803] de este título, cuando éste fuere el caso."

Las penalidades están dispuestas en la sec. 5–803 (1042) y en adición a la pena de cárcel, se provee: "(d) En caso de una primera convicción, además de las penalidades antes indicadas, el tribunal decretará la suspensión de la licencia de conducir por un período que no podrá ser menor de un (1) año ni mayor de dos (2) años y en caso de reincidencia la revocación será permanente..."

Según consta de la minuta del Tribunal Superior de Puerto Rico, Sala de Caguas, al hacer alegación de inocente en el acto de la lectura de la acusación, el acusado solicitó se le devolviera su licencia de conducir vehículos de motor, "por entender que la incautación de la misma, viola los dere-

chos del acusado en cuanto a la presunción de inocencia que le acompaña, ya que se le está privando del privilegio que se le concediera cuando le fue concedida la licencia, antes de celebrársele el juicio." La ilustrada Sala sentenciadora estuvo conforme con la devolución por los siguientes fundamentos: "Entendemos y concluimos que el acusado tiene razón en su planteamiento. Es cierto que el inciso (b) de la Sección 5–804 de la Ley de Tránsito, dispone que el magistrado, a quien se le somete el caso, una vez que determine causa probable ordenará el arresto del acusado, *'debiendo ocupar en el acto la licencia de conducir que posea el detenido o arrestado'*. A nuestro juicio esta disposición legal, en lo pertinente a la ocupación de la licencia por parte del magistrado que determine la causa probable es anti-constitucional, ya que viola no solamente el debido proceso de ley (en la práctica se le está suspendiendo la licencia sin previa vista alguna), si que también destruye la presunción de inocencia que acompaña a todo acusado, tanto del delito de guiar en estado de embriaguez, como del delito adicional de negarse injustificadamente al análisis químico que se le requirió. En otras palabras, el magistrado que determina la causa probable, a priori, está determinando que el acusado injustificadamente se ha negado a someterse al examen químico y le está *castigando sin antes haber tenido el acusado su día en corte, a la suspensión de la licencia.*"

En favor de los méritos de su solicitud de certiorari, el peticionario Pueblo de Puerto Rico, señala, que (1) erró el Tribunal Superior de Puerto Rico, Sala de Caguas "al determinar que la sección 5–804 de la Ley de Vehículos y Tránsito de Puerto Rico es anticonstitucional por cuanto viola el debido procedimiento de ley al no conceder una vista previa a la suspensión de una licencia de conductor"; (2) erró asimismo, "al determinar que la sección 5–804 de la Ley de Vehículos y Tránsito de Puerto Rico es anticonstitucional por

cuanto viola el principio que presume inocente a todo acusado". ■

1—Basándose en el innato poder público extraordinario que tiene toda Legislatura para enfrentarse, tanto a una emergencia de guerra como a una emergencia civil, está firmemente establecido el principio constitucional que cuando una urgente necesidad pública así lo demande, la Legislatura puede autorizar sumariamente la confiscación de un derecho de propiedad, sujeto a una posterior revisión judicial: (1) puede requisar propiedades necesarias al esfuerzo bélico, (2) apoderarse de toda propiedad que pueda serle útil al enemigo, (3) ordenar el arresto temporal de cualquier ciudadano por razón de seguridad pública; (4) confiscar un automóvil utilizado en el tráfico ilegal de drogas o licores, (5) un arma mortífera que lleve sobre su persona un agresor potencial, (6) cualquier material utilizado en la comisión de un delito; (7) tomar posesión de una propiedad abandonada por su poseedor antes que se establezca el hecho jurídico del abandono, (8) ordenar la demolición inmediata de cualquier propiedad que resulte peligrosa; (9) proceder al cobro inmediato de contribuciones sin previa valoración y tasa, (10) determinar que los inquilinos permanezcan en posesión de propiedades arrendadas contra la voluntad del arrendador, (11) establecer un control automático de precios para cualquier industria o negocio, (12) prohibir el uso de ciertos procedimientos o remedios procesales. Como una exposición de la variedad de circunstancias en que la situación de emergencia civil compara con la situación de la emergencia bélica, véase *Yakus* v. *United States*, 321 U. S. 414, 88 L. ed. 834 (Stone) (1944), cita precisa a las págs. 442–444 U. S., 858–859 L. ed. ■

Lo que debe investigarse no es la carencia de facultad constitucional, sino la sabiduría del ejercicio del poder público del Estado, lo mismo cuando se trate de un privilegio— concepto ya desacreditado—que de un derecho—46 Iowa Law Review 864–866 (1961). No creo que "la urgente necesidad

pública", creada por la ocurrencia de accidentes fatales en nuestras carreteras, necesite de una refinada exposición para demostrar su derecho a ser incluída en la lista de las emergencias civiles. ■

Dentro de la elaboración del concepto de la emergencia civil, se ha establecido la regla de la deferencia, o sea, la deferencia que merece el interés público frente al interés del individuo en un caso de urgente necesidad pública. La mejor exposición de esta regla la encontramos en el caso de *Wall v. King*, 206 F.2d 878 (Magruder) (1953), cita precisa a la pág. 883: "La opresión ejercida contra el conductor del vehículo, al serle suspendida su licencia durante la investigación y antes de la vista, debe soportarse como una deferencia al más amplio interés público que inspira al estatuto. Está bien establecido que el concepto del debido proceso de ley, no requiere necesariamente la concesión de una vista antes de la confiscación oficial que permite el ejercicio del poder público." ■

2—El acusado alega que el establecimiento de ciertas presunciones que dispone la ley, a los efectos de determinar, por el contenido de alcohol que arrojen las muestras de sangre u orina que se le tomen al detenido, si el conductor de un vehículo de motor se encuentra bajo los efectos de bebidas embriagantes, contraviene la secular y universalmente reconocida máxima de *in dubbio pro reo*, puesto que cambia el *onus probandi* y obliga al acusado a derrotar la presunción de estar borracho y que su negativa al no dejarse tomar la muestra de sangre, es *prima facie* injustificada, violando así la presunción de inocencia de que disfruta el acusado en todo proceso criminal. Por el contrario, El Pueblo de Puerto Rico alega, que la presunción de inocencia no constituye una cuestión de evidencia y es sólo una declaración constitucional que el Ministerio Fiscal debe probar el delito fuera de toda duda razonable. ■

El establecimiento de ciertas presunciones en cuanto al contenido de alcohol en las muestras de sangre u orina no tiene otro propósito que darle al magistrado instructor al determinar causa probable, una base más científica para apreciar debidamente si el conductor del vehículo estaba, al momento de cometer el delito, en estado de embriaguez. Es indudable que, tanto para establecer la comisión del delito de guiar bajo los efectos de bebidas alcohólicas, como para disponer de la revocación de la licencia del conductor, en el momento del juicio, el Ministerio Fiscal está en la obligación de probar además de la comisión del delito, la conducta injustificada del conductor al no dejarse tomar las muestras requeridas, antes que el acusado tenga que presentar su prueba de defensa. Se trata de dos situaciones de hecho distintas que deben ser establecidas con hechos diferentes; la primera se refiere a la comisión de un delito público; la segunda a la disposición administrativa de una licencia otorgada por el Estado.

La jurisprudencia del Estado de Nueva York tiene establecido el principio de la separabilidad de actuaciones, y ha resuelto que la licencia puede ser revocada aunque el acusado salga absuelto de la comisión del delito de guiar bajo los efectos de bebidas alcohólicas, si éste rehusa dejarse tomar la muestra de sangre u orina. Asimismo ha establecido que la licencia no debe revocarse cuando la prueba es insuficiente para demostrar que el acusado se negó a que se le tomara la muestra: 4 New York Jurisprudence 72–73, Sección 61, (edición de The Lawyers Co-operative Publishing Company de 1959). En cuanto a este último extremo, en igual sentido se ha pronunciado este Tribunal: *Rodríguez* v. *Srio. de Obras Públicas*, 86 D.P.R. 258 (1962).

*La resolución deberá ser revocada.*

El Juez Santana Becerra está conforme y además expresa sus fundamentos adicionales en opinión separada.

Opinión concurrente del Juez Asociado Sr. Santana Becerra.

Al concurrir en la decisión de este caso deseo exponer las siguientes consideraciones que a mi juicio justifican la norma adicional que creo debe establecerse, a la cual me referiré más adelante.

Ni el expediente ante el Tribunal de Instancia ni el de este Tribunal, contienen constancia alguna, como un hecho, de que el acusado se negara a someterse a un análisis de su sangre u orina. Tampoco hay estipulación de las partes en ese sentido. Es cierto que la Sala sentenciadora en la Resolución que revisamos expresó que el Juez de Paz que determinó causa probable se incautó de la licencia del acusado "al éste negarse a someterse al examen químico que se le requiriera." No sabemos la fuente ya que el récord taquigráfico en que se discutió el incidente relativo a la devolución de la licencia por razón de inconstitucionalidad de la disposición de ley en virtud de la cual se le quitó, no contiene expresión alguna sobre el particular. Sin embargo, tanto en la petición de *certiorari* como en su alegato ante nos el Procurador General expone que el acusado se negó a que se le sacara una muestra de sangre u orina, y partiendo de esa situación de hecho discute las cuestiones envueltas. El acusado no ha aceptado ni negado esas expresiones de la Sala sentenciadora y del Procurador, y queda el hecho que en efecto su licencia le fue quitada al determinarse causa probable. Asumo, por lo tanto, que eso fue lo que ocurrió, pues de lo contrario, de no haber existido negativa a someterse al análisis, la Sala sentenciadora podía haber dispuesto del incidente sin necesidad de entrar en la cuestión constitucional.(¹)

(¹)En un alegato ante la Sala sentenciadora el acusado expuso los hechos así, que luego reprodujo en el alegato a este Tribunal: "El acusado (aquí opositor) Don Juan Carrión Díaz, de 42 años, casado, padre de familia, y de profesión chófer de guagua, se personó voluntariamente al

Pero antes de continuar, me he visto precisado a disipar una duda surgida en mí mismo en cuanto a la interpretación de la disposición de ley que aquí se ataca por inconstitucional, que es la Sección 5–804(b) de la Ley Núm. 141 de 20 de julio de 1960—Ley de Vehículos y Tránsito—, después de la enmienda sufrida por dicha sección por la Ley Núm. 94 de 21 de junio de 1961. Al evaluar el planteamiento constitucional a ser decidido para mí es de fundamental importancia, que va al tuétano mismo del problema, el hecho de si esta sección requiere que el magistrado que determina causa probable se incaute de inmediato de la licencia en todos los casos en que hubiere determinado que se ha conducido un vehículo en estado de embriaguez aunque el detenido no haya puesto reparo alguno en someterse al análisis químico o si autoriza tal incautación sólo en aquellos casos en que, determinando causa probable, el detenido haya rehusado someterse al examen. La importancia que para mí tiene una u otra interpretación la expondré luego.

La Sección 5–804 de la Ley de Vehículos y Tránsito de 1960 titulada dicha sección por el propio legislador *"Procedimiento que habrá de observarse cuando la persona arrestada se negare, a someterse al análisis químico"*, dispuso en el inciso (a) que toda persona detenida por conducir un vehículo bajo los efectos de bebidas embriagantes puede rehusar someterse al análisis químico. Según el inciso (b) si el detenido se negaba a someterse al análisis, éste no le sería hecho, y sería conducido ante un magistrado. El

Cuartel de la Policía de Caguas durante la mañana del domingo 11 de marzo de 1962, con el propósito de solicitar información relacionada con una querella interpuesta por un vecino en su contra. De allí salió para la cárcel acusado por dos delitos de alteración a la paz: uno cometido en 'la salida para Gurabo' y el otro 'en la Sala de Retén del Cuartel de la Policía de Caguas', y además por el delito de conducir en estado de embriaguez. (Tribunal de Distrito, Criminal Nos. 62–508 y 62–523; Tribunal Superior, Criminal No. M–62–98). Por añadidura, se le despojó de su herramienta de trabajo: la licencia de conducir, en virtud del procedimiento dispuesto en la Sección 5–804 de la Ley 141 de 1960, y no se le devolvió a pesar de su sincera y reiterada protesta."

magistrado tomaría las declaraciones juradas que menciona dicho inciso incluyendo las de cualesquiera otras personas interesadas o que hubieren presenciado a la persona detenida conduciendo el vehículo de motor bajo los efectos de bebidas embriagantes, y si encontraba causa probable, ordenaría la radicación de la correspondiente denuncia o acusación y expediría orden de arresto, *debiendo ocupar en el acto la licencia de conducir que posea el detenido o arrestado.* Según el inciso (c) de la Sección 5-804, en el acto del juicio el magistrado debe disponer la suspensión de la licencia por no más de dos años cuando determine por la evidencia que el acusado *no estuvo justificado* al negarse a someterse al análisis químico.

La Sección 5-804 según se aprobó originalmente en el 1960 no deja la más leve duda de que la ocupación de la licencia de conductor en el acto de determinar causa probable procedía única y exclusivamente en aquellos casos en que el detenido hubiere rehusado someterse al análisis químico. Pero, con motivo de la enmienda del inciso (b) de la Sección 5-804 por la Ley Núm. 94 de 1961, la parte pertinente dispuso entonces así:

"En todos los casos, si el Magistrado considerare que existe causa probable de la comisión del delito por la persona detenida, expedirá la orden de arresto de rigor, debiendo ocupar en el acto la licencia de conducir que posea el detenido o arrestado."

Al igual que la disposición original, esta expresión legislativa forma parte de la propia Sección 5-804 en donde el legislador estableció el procedimiento a observarse cuando la persona arrestada se negare a someterse al análisis. En otras palabras, la duda la hizo surgir la frase *"en todos los casos"* que aparece con la enmienda de 1961, en cuanto a si fue la intención legislativa el que la licencia se ocupase en todos los casos en que el magistrado determinare causa probable de conducción en estado de embriaguez, lo mismo cuando el detenido se hubiese sometido al análisis químico

como cuando lo hubiere rehusado, o si por el contrario, sólo en aquellos casos de negativa, como lo era bajo la disposición original. El historial legislativo de la Ley Núm. 94 de 1961, que fue el Proyecto de la Cámara 270, el Informe de la Comisión de lo Jurídico de ese Cuerpo, y la discusión legislativa durante el proceso de su aprobación, me han disipado toda duda al efecto, y es mi criterio que aun después de la enmienda de 1961, la ocupación de la licencia en el acto de determinar causa probable quedó autorizada, como en la ley original, sólo en aquellos casos en que la persona detenida hubiere rehusado el análisis químico. El significado de la frase *"en todos los casos"* y la intención del legislador quedó para mí perfectamente aclarado durante el proceso legislativo.

El objetivo primordial que tuvo el Proyecto de la Cámara 270 fue darle intervención al Fiscal en la etapa inicial de determinación de causa probable debido a que ya se había dispuesto que estos casos de conducción en estado de embriaguez se tramitaran ante el Tribunal Superior y no ante el de Distrito. El Proyecto 270 enmendaba el inciso (c) de la Sección 5–803 de la ley de 1960 para concederle ahora al *Fiscal*, además de al magistrado, y a los funcionarios policíacos, autoridad para requerirle al detenido que se someta al análisis. También enmendó el inciso (h) de dicha Sección 5–803 al efecto de que el resultado del análisis químico fuera enviado al Fiscal del Distrito correspondiente, en lugar de a la Secretaría del Tribunal de Distrito. El Proyecto 270 enmendaba también el inciso (b) de la Sección 5–804 para incluir ahora al *Fiscal*, además de al magistrado, como persona ante quien puede ser conducido el detenido que ha rehusado el análisis, autorizándose al *Fiscal* al igual que al magistrado, a hacer la investigación y tomar declaraciones. Se eliminó la disposición que imponía al magistrado la obligación de ordenar la radicación de la denuncia o acusación.

En el Informe de la Comisión de lo Jurídico de la Cámara, sobre el Proyecto 270 se dijo:

"El Artículo VIII de la Ley de Vehículos y Tránsito, provee el procedimiento para las investigaciones en los casos en que las personas detenidas por el delito de conducir o hacer funcionar un vehículo bajo los efectos de bebidas embriagantes se nieguen a someterse al análisis químico de su aliento, su sangre u orina.

. . . . . . . . .

En relación con el procedimiento antes mencionado Vuestra Comisión entiende que los Fiscales, que tienen bajo la Ley la responsabilidad de formular y sostener las acusaciones en el Tribunal Superior, deben tener también la facultad de requerir a los detenidos que se someten a cualesquiera de los análisis químicos de su sangre, aliento u orina, a recibir los informes sobre el resultado de dichos análisis, y a tomar las declaraciones juradas a que anteriormente se ha hecho referencia.

El P. de la C. 270 dispone que en los casos en que un fiscal tome dichas declaraciones, si del examen de los testigos que hubieren declarado resultare que se ha cometido una infracción a las disposiciones del susodicho Artículo VIII y que hay causa suficiente para creer que la persona detenida o arrestada es culpable de su perpetración, el Fiscal someterá a un Magistrado la evidencia que así hubiere obtenido a fin de que éste determine causa probable de la comisión del delito. También se dispone que la causa probable será determinada *en todos los casos* por el Magistrado, quien expedirá contra ésta la orden de arresto de rigor, debiendo ocupar en el acto la licencia de conducir que posea el detenido o arrestado." (Subrayado nuestro.) *Diario de Sesiones* (Cámara) Mayo 16, 1961—Págs. 1250–1251.

Cualquier duda que aun quedara en cuanto al significado de la frase "en todos los casos" y a que la intención legislativa original al efecto de que sólo se ocupa la licencia en los casos en que hubiere una negativa a someterse al análisis por parte del conductor no fue alterada, se disipa definitivamente con la lectura de la discusión del Proyecto 270 en el hemiciclo del Senado. Se usó dicha frase para incluir tanto aquellos casos en que interviene el magistrado como en los que interviene el *Fiscal*, autorizado ahora para intervenir. *Diario de Sesiones* (Senado) Mayo 25, 1961, Págs. 1605–1607.

A los efectos de evaluar el planteamiento constitucional presentado, para mí el hecho aclarado tiene singular importancia, ya que la acción drástica de la ocupación de la licencia en la etapa de la determinación de causa probable no respondería primordialmente a una intención legislativa de darle al público la máxima protección "congelando" y sacando de circulación de inmediato a un conductor a quien se le ha hallado causa probable de guiar en estado de embriaguez. Que no responde a tal protección pública inmediata lo demuestra el hecho de que no importa el fuerte estado de embriaguez bajo el cual un detenido hubiere estado conduciendo, si se somete al análisis químico no se le ocupa la licencia de inmediato y, prestada la correspondiente fianza, esa persona, horas más tarde, podría estar conduciendo otra vez un vehículo de motor. El que la ocupación de la licencia proceda sólo por el hecho de no haberse sometido al análisis químico disuelve, a mi juicio, la base fundamental de justificación que tendría una medida tan drástica y rigurosa ya que, como he dicho, la ocupación de la licencia en tal caso no responde a una inmediata protección del público. Sobre todo es así si se considera que el hecho de si el detenido acepta o rehusa someterse a examen no tiene gran utilidad en la etapa de la determinación de causa probable por cuanto el magistrado en ese momento carece del beneficio del resultado de dicho examen.

No obstante lo anteriormente expuesto, no estoy tampoco en posición de sostener que la disposición aquí impugnada que autoriza la ocupación inmediata de la licencia carece totalmente de base razonable. Tiene el efecto, deseable, de desalentar la negativa a someterse al análisis, allí donde no hay una justificación, si se considera que el análisis puede ser de utilidad para el Estado más adelante en el proceso por el delito de guiar en estado de embriaguez.

A tenor de lo anteriormente expuesto es claro para mí que la ocupación de inmediato de la licencia en tales casos tiene

un concepto y el efecto de sanción punitiva por rehuir el análisis cuando todavía no se ha determinado si hubo o no justificación válida para la negativa.

Es deber de los tribunales hacer todo esfuerzo posible para sostener la constitucionalidad de un estatuto. Por otra parte, también es deber de los tribunales, allí donde choca el interés del público con el interés del ciudadano, tratar de buscar la fórmula de conciliación de esos intereses, protegiendo ambos y evitando, mientras se pueda, que el uno destruya al otro. Con estos criterios en mente, considerando que en tales casos, que se tramitan en el Tribunal Superior, un Fiscal tiene hasta 60 días para radicar acusación y el Tribunal hasta un período adicional de cuatro meses para la celebración del juicio dentro de los términos prescriptivos permisibles, aparte de las dilaciones justificadas que puedan ocurrir, antes de que se adjudique el hecho de si hubo o no justificación por parte del detenido para no someterse a examen, entiendo, para una debida protección de aquel acusado de entre otros culpables que a la larga pueda resultar inocente del hecho de no haberse sometido al análisis sin justificación, que el Tribunal debe dar un mandato al Tribunal Superior al efecto de que tan pronto un acusado a quien se le ha ocupado la licencia lo solicite, aun cuando no se hubiere radicado todavía la acusación, se celebre una vista judicial en donde se determine, previa audiencia de las partes y a la luz de la prueba producida, si el acusado estuvo o no justificado en no someterse a examen, y si el Tribunal Superior concluyere que lo estuvo, le deberá restituir de inmediato su licencia aunque quedaren pendientes los demás procedimientos sobre la comisión del delito para dilucidarse en su día. Me parece que la anterior norma es necesaria para liberar la disposición de ley que aquí se ha atacado como inconstitucional de un sentido de opresión e injusticia para el caso de un inocente. No voy a entrar en una discusión árida en cuanto a si la licencia para conducir vehículos de motor es

un derecho o un privilegio, claro está, nadie nace con el derecho natural de ser chófer, pero será cerrar los ojos a la realidad en que vivimos si se ignorase que el disfrute de la facultad de conducir vehículos de motor una vez que se ha obtenido en ley no tiene hoy el mismo concepto que podía tener cuando el automóvil sólo se usaba para solaz de la familia los días festivos.

Al revocarse la sentencia yo instruiría a la Sala sentenciadora que, de estar aún ocupada esta licencia, celebre de inmediato una vista y determine si hubo o no justificación para rehusar el análisis químico, si ese fue el hecho, y si ya no se hubiere dispuesto definitivamente del asunto.