EL PUEBLO DE PUERTO RICO, peticionario, *v.* TRIBUNAL SUPE-
RIOR, SALA DE MAYAGUEZ, HON. ALFREDO ARCHILLA GUE-
NARD, JUEZ, demandado; JOSÉ ÁNGEL CUEVAS RAMÍREZ,
interventor.

*Número:* C-63-84      *Resuelto:* 31 de diciembre de 1964

*J. B. Fernández Badillo, Procurador General,* y *Américo Serra,
Procurador General Auxiliar,* abogados del peticionario;
*Carlos García Méndez,* y *Raúl Ramos Torres,* abogados del
interventor.

Sala integrada por el Juez Asociado Señor Blanco Lugo como
Presidente Accidental de Sala y los Jueces Asociados Señores
Dávila y Ramírez Bages.

EL JUEZ ASOCIADO SEÑOR BLANCO LUGO emitió la opinión del
Tribunal.

Con motivo de ciertos hechos ocurridos el día 11 de abril de 1963, José Ángel Cuevas Ramírez fue conducido ante el Hon. Eugenio Velázquez Martín, Juez de Distrito, Sala de Cabo Rojo. Los autos originales no revelan los procedimientos que tuvieron lugar ante dicho magistrado. Sin embargo, obra en los mismos una fianza por la cantidad de $500 prestada y aprobada en dicha fecha para permanecer en libertad provisional en relación con el delito de conducir un vehículo de motor bajo la influencia de bebidas embriagantes. Cuando menos, este hecho presupone que el magistrado encontró causa probable para expedir una orden de arresto por el referido delito.

En 14 y 18 de abril el fiscal Luis A. Limeres tomó declaraciones juradas a los testigos Noé Quirsola y su esposa Ramonita Acosta, así como al policía Miguel A. Ramírez Torres. El día 23 siguiente el fiscal Noel Vera Mercado, basándose en estas declaraciones, juró denuncia en el Tribunal Superior, Sala de Mayagüez, contra Cuevas imputándole una infracción al Art. 5-801 de la Ley de Vehículos y Tránsito, 9 L.P.R.A. sec. 1041. El acusado permaneció en libertad bajo la misma fianza que había aprobado el Juez Velázquez Martín.

El día señalado para la vista el acusado solicitó el archivo y sobreseimiento del caso "porque no se cumplió . . . con el procedimiento establecido en la última enmienda a la Ley de Tránsito de Puerto Rico, aprobada en junio 21 de 1961," (¹)

---

(¹) Dicho inciso (b) lee como sigue:

"Si el detenido se negare a someterse al análisis químico de su aliento, o de su sangre u orina, según fuere el caso, el análisis no le será hecho, y será conducido ante un Magistrado, o ante un Fiscal, quien deberá tomar a la mayor brevedad posible una declaración jurada al agente del orden público que practicó la detención, en la cual se deberán expresar los hechos que motivaron la detención, así como el hecho de haber sido requerido el detenido por dicho agente del orden público, o por cualquiera de los funcionarios mencionados en el inciso (c) de la precedente sección 5-803, a someterse a uno de los análisis químicos estipulados en este artículo, y la negativa del detenido a someterse al análisis ofrecido. Si dicho requerimiento hubiere sido hecho por el agente del orden público a cargo

fundándose en que (a) el fiscal no sometió las declaraciones tomadas a un magistrado para que determinara causa probable, y (b) el juez de distrito no tomó declaraciones juradas escritas cuando se le sometió el caso. Aparece que durante la vista el fiscal admitió que no había sometido el expediente levantado por él a ningún magistrado y que tampoco tenía en el sumario una determinación de causa probable suscrita por el Juez Velázquez Martín. (2) El tribunal de instancia declaró con lugar la cuestión de derecho planteada "por no haberse sometido [por el fiscal] el expediente a un magistrado para

---

inmediato del puesto, distrito o zona de la Policía, donde se efectuó el arresto y no por el agente del orden público que hubiere practicado la detención, deberá tomársele declaración jurada sobre el particular a dicho agente y en la misma deberá declararse el hecho del requerimiento y la negativa del detenido a someterse al referido análisis químico. Cualquiera de los agentes del orden público antes mencionados incluirá en su declaración jurada, además de los extremos antes indicados, el hecho de que explicó al detenido las consecuencias de su negativa. El Magistrado, o el fiscal en su caso, deberá también tomar a la mayor brevedad posible declaraciones juradas a cualesquiera otras personas que hubieren presenciado a la persona detenida conduciendo o haciendo funcionar el vehículo de motor bajo los efectos de bebidas embriagantes.

"En los casos en que un fiscal tome dichas declaraciones, si del examen de los testigos que hubieren declarado resultare que se ha cometido cualquier infracción a las disposiciones de este artículo y que hay causa suficiente para creer que la persona detenida o arrestada es culpable de su perpetración, el fiscal someterá a un Magistrado la evidencia que así hubiere obtenido a fin de que éste determine causa probable de la comisión del delito.

"En todos los casos, si el Magistrado considerare que existe causa probable de la comisión del delito por la persona detenida, expedirá la orden de arresto de rigor, debiendo ocupar en el acto la licencia de conducir que posea el detenido o arrestado.

"Copia de estas declaraciones juradas le serán entregadas al detenido a su requerimiento."

(2) En las copias de las declaraciones juradas de la señora Quirsola y el policía Ramírez Torres, que aparecen unidas a los autos originales del presente recurso, se hace referencia a que Cuevas fue identificado ante el Juez Velázquez "y es la misma persona que fue *acusada* por el Juez", y específicamente que "Fue llevado a presencia del Hon. Juez Velázquez Martín quien después de oir la prueba y ver al detenido lo *acusó* de Inf. al Art. VIII de la Ley de Vehículos y Tránsito fijándole una fianza de $500, y por exceso de velocidad con $500 de fianza, siendo ingresado en la Cárcel de San Germán al no prestar ésta."

la determinación de causa probable." El fiscal solicitó la reconsideración y ofreció prueba para establecer que "todos los testigos, inclusive el acusado, fueron llevados a presencia del juez Velázquez Martín y que los examinó, inclusive el acusado, haciéndole todas las advertencias de ley" y que "luego de haber oído los testigos se determinó causa probable y se ordenó el ingreso." El juez declaró sin lugar la reconsideración y ratificó su resolución decretando el archivo y sobreseimiento de la causa.

Decidimos revisar esta actuación.

1—Estrictamente hablando no puede considerarse la moción presentada por el acusado como una para desestimar la acusación, pues según la legislación entonces en vigor—Art. 145 del Código de Enjuiciamiento Criminal, 34 L.P.R.A. sec. 331—ello procedía únicamente en causas por delitos graves y por el único fundamento de no haber sido la acusación firmada y jurada por el fiscal. Tampoco podría considerarse como una excepción perentoria, ya que del contenido de la misma no resulta ninguno de los reparos a que se refería el Art. 153 de dicho cuerpo legal, 34 L.P.R.A. sec. 364. (³) Sin embargo, la consideraremos como una moción impugnatoria de la jurisdicción del tribunal por no haberse cumplido con ciertos requisitos establecidos en la Sec. 5-804 de la Ley de Vehículos y Tránsito. Art. 161 del Código de Enjuiciamiento Criminal, 34 L.P.R.A. sec. 372; *Irizarry* v. *Corte*, 62 D.P.R. 592 (1943); *Pueblo* v. *Trápaga*, 15 D.P.R. 211 (1909); *Pueblo* v. *Alomar*, 10 D.P.R. 297 (1906); cf. Regla 62, en relación con las Reglas 63 y 64(b) de las de Procedimiento Criminal de 1963.

---

(³) La acusación imputa al acusado que "ilegal, voluntaria, maliciosa y criminalmente, conducía bajo los efectos de bebidas embriagantes por la vía pública un vehículo de motor." Obviamente (a) está redactada en lenguaje conciso y corriente y contiene una exposición suficiente de los actos constitutivos del delito; (b) no imputa más de un delito público; y, (c) no contiene materia justificativa o exculpativa.

2—En *Pueblo* v. *Otero Valle*, 89 D.P.R. 73 (1963), hicimos un recuento de la legislación sobre el delito de conducir un vehículo de motor bajo la influencia de bebidas embriagantes. Señalamos que se incorporó específicamente a nuestro Derecho penal mediante la adopción del Art. 13 de la Ley Núm. 279 de 5 de abril de 1946 (Leyes, págs. 599, 637). Varios años transcurrieron. Ante la incidencia de accidentes graves con las consiguientes pérdidas de vidas y propiedad, la Asamblea Legislativa aprobó la Ley Núm. 95 de 25 de junio de 1954 (Leyes, pág. 993), que castigaba más severamente a los violadores de esta sección y proporcionaba ciertos medios para, mediante el sistema de exámenes químicos, determinar el grado de intoxicación alcohólica de los conductores. Se proveyó el procedimiento para la toma de muestras y se determinó el efecto probatorio del resultado de los exámenes.

Ante la posibilidad de la negativa de un detenido a someterse al examen requerídole, se dispuso en el inciso 7 que:

"Si dicha persona una vez haya sido arrestada y subsiguientemente requerida a someterse a dicho análisis químico, rehusare someterse al mismo, el análisis no le será hecho. El oficial del orden público que practicó el arresto llevará la persona arrestada ante un Magistrado quien, después de investigar el caso y de oir, bajo juramento, al oficial del orden público, a la persona arrestada y a cualquier otra persona interesada, *ordenará si existiere causa probable, que se radique la correspondiente denuncia o acusación* ante el Tribunal de Primera Instancia contra la persona arrestada." (Bastardillas nuestras.)

Íntimamente ligado a esta disposición se estableció un procedimiento administrativo para la suspensión de la licencia por el Secretario de Obras Públicas a los conductores que se negaren a someterse al análisis químico. Este procedimiento se iniciaba mediante la remisión por el magistrado al Secretario de copia de las declaraciones juradas a que alude el inciso transcrito, y éste, a base de dichas declaraciones, podía suspender la licencia de conductor a la persona arrestada.

El perjudicado podía solicitar una vista dentro de sesenta días para justificar su negativa a someterse a examen. Vemos, pues, que desde su origen, el propósito de las declaraciones juradas fue facilitar la iniciación del trámite administrativo para la suspensión de la licencia por la negativa a someterse al examen, que era independiente del proceso criminal por el delito de conducir en estado de embriaguez, que también podía dar margen a la suspensión o cancelación de la licencia.

La Sec. 5-804 de la Ley de Vehículos y Tránsito de 1960 conservó sustancialmente el procedimiento anterior. Los cambios principales introducidos consistieron en: 1—especificar el contenido de las declaraciones juradas, con particular énfasis en los hechos del requerimiento al detenido para que se someta a examen, su negativa y el apercibimiento de las consecuencias que tal negativa acarrea; 2—se dispone la entrega de copia de las declaraciones al detenido, a requerimiento de éste; y 3—se elimina el procedimiento ante el Secretario de Obras Públicas para la suspensión de la licencia por la negativa a someterse a examen, y se traslada esta facultad al tribunal que entiende en la causa criminal. [4]

---

[4] Es conveniente consignar que el proyecto que finalmente se convirtió en la Ley Núm. 141 (Sustituto al P. del S. 304) disponía en su Sec. 5-805 el procedimiento administrativo para la suspensión de la licencia cuando el conductor se negaba a someterse a examen; y que en términos generales, era muy similar al anteriormente establecido en 1954. Así permaneció el proyecto hasta que en las postrimerías de la discusión en la Cámara de Representantes en 22 de junio de 1960 se propuso la eliminación de la vista administrativa ante el Secretario de Obras Públicas y su traslado al tribunal que interviniera en la infracción. *Diario de Sesiones*, 1960, pág. 2227.

Al procederse a la eliminación de la facultad del Secretario de Obras Públicas para suspender la licencia por mor de la negativa a someterse a examen inadvertidamente se conservó todo lo relativo a la toma de las declaraciones juradas por el magistrado, que, como hemos señalado, tenía importancia dentro del procedimiento administrativo para iniciarlo y facilitar al Secretario el conocimiento de los hechos en los cuales fundar su actuación. Al referirnos a esa situación dijimos en *Pueblo* v. *Tribunal*

Se conservó íntegramente la anterior disposición al efecto de que el magistrado, "si existiere causa probable, ordenará que se radique la correspondiente denuncia o acusación ante el Tribunal de Primera Instancia contra la persona detenida y expedirá contra éste [*sic*] la orden de arresto de rigor."

En 1961, mediante la Ley Num. 94 de 21 de junio, se enmendó la Sec. 5-804. Dejemos que el informe de la Comisión de lo Jurídico de la Cámara de Representantes explique el alcance de las enmiendas: ([5])

"El Artículo VIII de la Ley de Vehículos y Tránsito, provee el procedimiento para las investigaciones en los casos en que las personas detenidas por el delito de conducir o hacer funcionar un vehículo bajo los efectos de bebidas embriagantes se nieguen a someterse al análisis químico de su aliento, su sangre u orina.

"Dispone la ley actualmente que dichas personas serán conducidas ante un Magistrado, quien tomará declaración jurada al agente de orden público que practicare la detención y además tomará declaraciones juradas a cualesquiera otras personas interesadas o que fueren testigos, y si encontrare dicho Magistrado causa probable, ordenará su arresto y ocupará la licencia de conducir que posee el detenido.

"En relación con el procedimiento antes mencionado Vuestra Comisión entiende que los Fiscales, que tienen bajo la Ley la responsabilidad de formular y sostener las acusaciones en el Tribunal Superior, deben tener también la facultad de requerir a los detenidos que se sometan a cualesquiera de los análisis químicos de su sangre, aliento u orina, a recibir los informes sobre el resultado de dichos análisis, y a tomar las declaraciones juradas a que anteriormente se ha hecho referencia.

"El P. de la C. 270 dispone que en los casos en que un fiscal tome dichas declaraciones, si del examen de los testigos que hubieren declarado resultare que se ha cometido una infracción a las disposiciones del susodicho Artículo VIII y que hay causa suficiente para creer que la persona detenida o arrestada es

*Superior*, 86 D.P.R. 834 (1962) que "Se trata de dos situaciones de hecho distintas que deben ser establecidas con hechos diferentes; la primera se refiere a la comisión de un delito público; la segunda, a la disposición administrativa de una licencia otorgada por el Estado."

([5]) *Diario de Sesiones*, 1961, págs. 1250–1251.

culpable de su perpetración, el Fiscal someterá a un Magistrado la evidencia que así hubiere obtenido a fin de que éste determine causa probable de la comisión del delito. También se dispone que la causa probable será determinada en todos los casos por el Magistrado, quien expedirá contra ésta la orden de arresto de rigor, debiendo ocupar en el acto la licencia de conducir que posea el detenido o arrestado.

"La disposición en el sentido de que el Magistrado ordenará que se radique la correspondiente acusación se elimina, toda vez que el estado de nuestro derecho actual sobre este particular es en el sentido de que la determinación de causa probable es para los solos fines de ordenar el arresto de un acusado, mientras que la determinación de si se radica una acusación o no es una determinación ejecutiva."

Es altamente significativo que en el nuevo texto se eliminó la frase anterior "y si existiere causa probable ordenará que se radique la correspondiente denuncia o acusación ante el Tribunal de Primera Instancia contra la persona detenida y expedirá contra éste la orden de arresto de rigor." Esa eliminación se explica en el informe diciendo: "La disposición en el sentido de que el Magistrado ordenará que se radique la correspondiente acusación se elimina, toda vez que el estado de nuestro derecho actual sobre este particular [se refiere al año 1961, antes de la aprobación de las Reglas de Procedimiento Criminal de 1963 que en la Regla 23 establece el procedimiento de vista preliminar en los casos graves] es en el sentido de que la determinación de causa probable es *para los solos fines de ordenar el arresto de un acusado, mientras que la determinación de si se radica una acusación o no es una determinación ejecutiva.*" (Bastardillas nuestras.) Es cierto que en el segundo párrafo del inciso (b) de la sección considerada se dice que una vez tomadas las declaraciones, "el fiscal someterá a un magistrado la evidencia que así hubiese obtenido a fin de que éste determine causa probable de la comisión del delito," pero esta disposición debe leerse conjuntamente con la siguiente al efecto de que "En todos los casos [se refiere a los casos en que la investigación la practica

el magistrado personalmente o un fiscal], si el magistrado considerarse que existe causa probable de la comisión del delito por la persona detenida *expedirá la orden de arresto de rigor . . . .*"

De este historial legislativo se deduce que no es necesario que el fiscal someta a un magistrado las declaraciones juradas por él tomadas a los fines de que éste determine la existencia de *causa probable para acusar*, sino meramente como en todos los casos, *para determinar la existencia de causa probable a los fines de expedir una orden de arresto únicamente*. Debe observarse, además, que cuando el conductor se somete al examen no es necesario seguir un procedimiento tan elaborado. Ello es así porque en tales casos no se conlleva la penalidad de la suspensión adicional de la licencia, que es independiente del resultado del proceso criminal. Fue erróneo el fundamento aducido por el tribunal de instancia para decretar el archivo y sobreseimiento de la causa criminal. [6]

*Se revocará la resolución dictada por el Tribunal Superior, Sala de Mayagüez, en 19 de agosto de 1963, y se devolverá el caso para ulteriores procedimientos.*

---

[6] No es necesario que consideremos si los procedimientos seguidos ante el Juez Velázquez Martín evidenciaron que dicho magistrado encontró causa probable aun para acusar.