EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* LUIS PÉREZ ESCOBAR, acusado y apelante.

*Número:* CR-63-334     *Resuelto:* 6 de octubre de 1964

*Ramón Morán Loubriel,* abogado designado por el Tribunal Supremo para ofrecer asistencia legal al acusado en apelación; *J. B. Fernández Badillo, Procurador General,* y *Peter Ortiz, Procurador General Auxiliar,* abogados de El Pueblo.

Sala integrada por el Juez Asociado Señor Pérez Pimentel como Presidente de Sala y los Jueces Asociados Señores Rigau y Dávila.

EL JUEZ ASOCIADO SEÑOR PÉREZ PIMENTEL emitió la opinión del Tribunal.

El apelante fue convicto de conducir un vehículo de motor estando bajo los efectos de bebidas embriagantes y sentenciado a una pena de seis meses de cárcel más la suspensión de su licencia de conductor por el término de un año.

El alegato del apelante, preparado por el abogado que le designamos para que lo representara en este recurso y que revela un cuidadoso estudio de las cuestiones que suscita, señala la comisión de tres errores. El primero lo enuncia así:

"Cometió error el Honorable Tribunal Inferior en la evaluación y apreciación de la prueba, ya que ésta es contradictoria e

insuficiente para probar la comisión del delito fuera de toda duda razonable."

Sostiene que la prueba de cargo es insuficiente para demostrar que el acusado se encontraba en estado de embriaguez en el momento en que conducía el vehículo. Este planteamiento requiere que hagamos un resumen de dicha prueba.

El día 3 de diciembre de 1961, en horas de la tarde, mientras el policía Santos García y el sargento Navarro daban una ronda por el Caserío Isidro Cora de Arroyo, al salir del caserío hacia la Calle Morse, les pasó por el lado cerca de la esquina, el acusado conduciendo un vehículo de motor. Al llegar a la esquina el señor Alejandro Cora y una niña le dijeron que "ese carro que va ahí les había chocado el carro del papá que estaba en la calle . . . ." De acuerdo con el testimonio del señor Cora el vehículo conducido por el acusado fue el que chocó con el automóvil del padre de la niña. La policía persiguió al acusado. El policía García se dirigió en el "jeep" en una dirección y el sargento siguió a pie en otra dirección. Encontraron el vehículo del acusado frente a una casa en el caserío Isidro Cora. Como a los 5 ó 10 minutos según el testimonio del policía García o como a los 15 ó 20 minutos, según el sargento, encontraron al acusado en la calle del caserío donde estaba su vehículo. García declara: "Estaba completamente borracho, no se sostenía en los pies, daba tumbos, los ojos, (sic) hablaba incoherentemente, no podía casi hablar, estaba completamente borracho." Lo condujeron al cuartel de la policía. Allí lo vió el señor Cora quien declaró que el acusado estaba "un poco gendío" que quiere decir que estaba en aparente estado de embriaguez y caminaba dando zigzags. El acusado se negó a dejarse tomar una muestra de sangre.

La prueba de defensa tendió a establecer que el acusado se prestó a dar una muestra de orina pero que no pudo orinar en cantidad suficiente para el análisis correspondiente. Tam-

bién tendió a demostrar que el acusado no conducía el vehículo ni antes ni después del accidente, sino que lo conducía otra persona de nombre Carmelo Rosario, quien no declaró en el juicio; que después del accidente se estacionaron frente a la casa de Eduvigis Lebrón en el caserío y el que conducía el vehículo se quedó esperando al dueño del carro chocado porque no estaba en su casa; que el acusado entró a la casa de Eduvigis Lebrón y allí se tomaron tres o cuatro cervezas cada uno y una canequita de ron; que como a los tres cuartos de hora bajaron y no encontraron el vehículo ni la persona que lo conducía; que entonces el acusado se dirigió al cuartel de la policía y allí lo cogieron porque estaba conduciendo un vehículo en estado de embriaguez; que lo llevaron al hospital y se negó a dar una muestra de sangre porque no había cometido ningún delito pero que trató de dar una muestra de orina pero la cantidad que orinó fue insuficiente.

Al discutir la insuficiencia de la prueba, el apelante argumenta: "Ya que no se puede dar aplicación a la presunción de continuidad que establece el inciso 3, del Título 32 LPRA, Sec. 1887, por no aplicar ésta retrospectivamente, sólo puede considerarse la intoxicación del acusado en el momento del arresto como prueba circunstancial de que así lo estaba en el momento del accidente. Véase, *State* v. *Hamer*, 274 N.W. 885, Iowa, 1937. No habiendo otra prueba que robustezca dicha inferencia y al contrario habiendo testimonio no contradicho de que el acusado tuvo acceso a licor, que ingirió licor y además prueba de que transcurrió un período de tiempo sustancial entre el accidente y el arresto es evidente, que la evidencia ofrecida por el Pueblo es insuficiente para establecer que el acusado manejaba un automóvil bajo los efectos de bebidas embriagantes." Sostiene además que aunque en algunas jurisdicciones existe la regla de que la evidencia circunstancial debe excluir cualquier hipótesis razonable de la inocencia del acusado, la evidencia necesaria para esta-

blecer el delito fuera de toda duda razonable tanto en esas jurisdicciones como en Puerto Rico, es la misma.

■ La doctrina de que la prueba circunstancial debe ser no sólo compatible con la culpabilidad del acusado, sino incompatible con cualquier otra hipótesis razonable de inocencia fue expresamente abandonada en nuestra jurisdicción, al resolver el caso de *Pueblo* v. *Bonilla*, 78 D.P.R. 152, 161 (1955). Desde entonces el problema se reduce a determinar si la evidencia—bien sea circunstancial o testifical—establece la culpabilidad del acusado fuera de duda razonable. Precisamente lo que debemos resolver en el presente caso es si la prueba es suficiente para establecer más allá de duda razonable, que en la fecha indicada en la acusación el apelante conducía un vehículo de motor estando bajo efectos de bebidas embriagantes.

Es cierto que no hay prueba directa del estado de embriaguez del acusado en el momento del accidente, excepto la manifestación del testigo señor Cora quien al preguntársele que cómo venía el acusado en ese automóvil, contestó: "Venía un poco mal." Aunque tal manifestación por sí sola no establecería el estado de embriaguez del acusado en aquel momento, consideramos que la otra prueba sí lo establece.

■ El acusado fue arrestado entre 5 y 20 minutos después de ocurrir el accidente. No parece que el sitio donde fue arrestado quedara lejos del sitio del accidente ya que el Sargento de la policía se encaminó a pie a dicho sitio. En el momento del arresto el acusado estaba completamente borracho, no se sostenía en los pies, daba tumbos, hablaba incoherentemente, no podía casi hablar, estaba completamente borracho, según declaró un testigo de cargo. En el cuartel de la policía, donde se le condujo, fue visto por el testigo señor Cora "medio gendío", en aparente estado de embriaguez. El acusado sostiene sin embargo, que él ingirió licor después del accidente y que la prueba a ese respecto no fue contradicha. Si bien es cierto que ningún testigo declaró que el

acusado no había ingerido licor entre 5 y 6 de la tarde de ese día, o sea, después que fue visto conduciendo un vehículo de motor, no puede por eso, afirmarse que el juez sentenciador venía obligado a creer que tal hecho era cierto y que el acusado decía la verdad. En primer lugar el acusado sostuvo que había estado ingiriendo licor por espacio de 45 minutos. Claro está eso daría visos de probabilidad del estado de embriaguez en que se encontraba cuando fue arrestado; pero lo cierto es que en cuanto al lapsus de tiempo que transcurrió entre el accidente y el arresto, la prueba de defensa fue contradicha por la de cargo ya que ésta estableció dicho lapso de tiempo entre 5 y 20 minutos. El acusado negó que condujera el vehículo de motor, negó que fuera arrestado en el caserío Isidro Cora y conducido al cuartel de la policía, negó que cuando ocurrió el accidente siguieran su marcha y no se detuvieran. Toda esta prueba está en conflicto con la prueba de cargo, la que sin duda alguna fue creída, y a nuestro juicio correctamente, por el juzgador de los hechos. Desacreditada en esa forma la prueba de defensa, tenía base el juez para no creer aquella parte que pretendía establecer que el acusado tuvo acceso e ingirió bebidas embriagantes después de ocurrir el accidente. La evidencia presentada en el caso, es suficiente para establecer, más allá de duda razonable que el apelante conducía un vehículo de motor estando bajo los efectos de bebidas embriagantes tal y como se le imputó en la acusación.

La jurisprudencia citada por el apelante no nos lleva a una conclusión contraria por ser distinguible, en cuanto a sus hechos, a los del presente caso. En *Bland* v. *City of Richmond*, 55 S.E.2d 289, se aplicó la doctrina de que la evidencia circunstancial no eliminaba cualquier otra hipótesis de inocencia del acusado. Un oficial de la policía declaró que a los pocos minutos de haber ocurrido un accidente se dirigió al sitio de la ocurrencia y vio el automóvil vacío; y que pocos minutos después el acusado fue traído al sitio por otro agente de la policía y admitió que conducía el automóvil. La corte

hizo énfasis en que la policía no sabía cuándo había ocurrido el accidente aunque creía que había sido pocos minutos antes. También consideró el hecho de que el agente que trajo al acusado al sitio del accidente no declaró. Concluyó el tribunal que la prueba no era incompatible con la hipótesis de que el acusado hubiera ingerido licor después del accidente.

En *Fowlkes* v. *Commonwealth*, 74 S.E.2d 683, el único testigo de cargo, un agente de la policía declaró que no sabía cuándo había ocurrido el accidente ni cuál era el estado del acusado en ese momento.

En *Coffey* v. *Commonwealth*, 116 S.E.2d 257, se aplicó también la regla del caso de *Bland* sobre la prueba circunstancial.

En *Gamble* v. *State*, 60 So.2d 696, el único testigo de cargo no había visto al acusado conducir el automóvil. El Estado no cumplió en ese caso con su obligación de probar que después del accidente y hasta su arresto el acusado no tuvo acceso a bebidas embriagantes.

En *Blevins* v. *State*, 90 So.2d 98, se siguió la misma regla al efecto de que evidencia de la embriaguez del acusado tiempo después de haberse cometido el delito (conducir un vehículo en estado de embriaguez) no es admisible a menos que primero se pruebe que en el entretanto el acusado no tuvo acceso a bebidas embriagantes.

En *City of Columbus* v. *Samuels*, 174 N.E.2d 250, el único testigo de cargo no vio al acusado conducir el vehículo ni pudo precisar el tiempo transcurrido entre el accidente y su arresto.

Convenimos con el apelante en que disponiendo el Art. 8 de la Ley Núm. 141 de 1960 (9 L.P.R.A. sec. 1001) que será ilegal que cualquier persona bajo los efectos de bebidas embriagantes conduzca o haga funcionar cualquier vehículo de motor, para que se cometa el delito debe probarse el estado de embriaguez del acusado en el momento de conducir o hacer funcionar el vehículo. Ello no significa sin em-

bargo, que prueba del estado posterior de embriaguez del acusado sea siempre insuficiente para establecer más allá de duda razonable su estado de embriaguez al momento de conducir el vehículo. Ninguna regla obliga al juez a creer el testimonio de un acusado al efecto de que ingirió bebidas alcohólicas después de dejar de conducir el vehículo, si su testimonio y el de los otros testigos de defensa, no son dignos de crédito por estar en abierta contradicción con testimonios creídos por el juzgador y además por lo improbable de que en el breve lapso de 5 a 20 minutos ingiriera cantidad de bebidas embriagantes suficientes para quedar "completamente borracho" según describió su estado la prueba de cargo. Como tanto el acusado como su testigo Eduvigis Lebrón, faltaron a la verdad en aspectos esenciales de sus testimonios, el juzgador estuvo justificado en estimar que habían faltado a la verdad en todo y rechazar la versión de que el acusado había ingerido bebidas embriagantes después del accidente. Art. 524 Código de Enjuiciamiento Civil (32 L.P.R.A. sec. 1679); *Pueblo* v. *Nieves,* 57 D.P.R. 784 (1940); *Rivera* v. *Zavala,* 43 D.P.R. 105 (1932); *El Pueblo* v. *Español,* 16 D.P.R. 213 (1910).

Y es claro que el resto de la prueba produce la convicción moral, más allá de duda razonable de que el apelante en este caso condujo un vehículo de motor estando bajo los efectos de embriagantes y que en su consecuencia violó el Art. 8 de la citada Ley Núm. 141, no siendo incorrecta ni la evaluación ni la apreciación que de dicha prueba hizo el tribunal sentenciador.

■ En el segundo señalamiento sostiene el apelante que el Tribunal sentenciador erró al no tomar como fecha para el comienzo de la suspensión obligatoria de la licencia de conducir, la fecha de la convicción.

Al decretar la suspensión de la licencia por el término de un año, el tribunal a quo resolvió que dicho término comenzaría a correr a partir de la fecha en que el acusado extin-

guiera los seis meses de cárcel y fuera puesto en libertad. Ese pronunciamiento no se hizo formar parte de la sentencia. Ésta, en tanto decreta la suspensión de la licencia de conducir del apelante por un período de un año es correcta. Sin embargo, si se entendiera que fue la intención del Tribunal a quo incorporar dicho pronunciamiento a la sentencia, opinamos que el mismo es erróneo.

La Sec. 5-802 de la Ley de Vehículos y Tránsito (9 L.P.R.A. sec. 1042(d)), dispone: "En caso de una primera convicción, además de las penalidades antes indicadas, el tribunal decretará la suspensión de la licencia de conducir por un período que no podrá ser menor de un (1) año ni mayor de dos (2) años y en caso de reincidencia la revocación será permanente. . . ."

Esta disposición guarda silencio en cuanto a la fecha en que comenzará a correr el período de suspensión de la licencia; pero como juiciosamente apunta el apelante, el estudio de otras disposiciones de la misma ley, llevan a la conclusión de que dicho término se cuenta a partir de la fecha de convicción. Así tenemos que la Sec. 11-102(a) (9 L.P.R.A. sec. 1642), dispone: "Cuando por virtud de las disposiciones de este Capítulo o sus reglamentos, un tribunal suspendiese o revocare la licencia de una persona a conducir vehículos de motor, el juez se incautará de la licencia del conductor afectado y el secretario de la sala sentenciadora la enviará al Secretario junto con una copia certificada de la sentencia donde se expresa claramente los términos de la suspensión o revocación."

Cuando se trata de personas no autorizadas a conducir vehículos de motor, la Sec. 11-103 (9 L.P.R.A. sec. 1643) dispone: "Cuando una persona fuere convicta de un delito que, de haber sido conductor autorizado, le hubiere acarreado la suspensión de su licencia, el Secretario no le expedirá licencia de conducir por un período igual al que hubiere aparejado dicha suspensión, *contado desde la fecha de la convicción.*" (Bastardillas nuestras.)

El punto de partida para computar el término de suspensión no debe ser diferente en el caso de un convicto autorizado a conducir, ya que el propósito que persigue la ley, en uno y otro caso, es el mismo, el de proteger al público, temporal o definitivamente, contra el peligro que representa en las carreteras un conductor de vehículos de motor estando bajo los efectos de bebidas embriagantes. Al convicto autorizado a conducir se le suspende su licencia de conductor por determinado período, y al convicto no autorizado a conducir se le niega autorización (no expedición de licencias) para conducir por igual período. Por lo tanto, siendo el propósito de la ley el mismo en ambos casos no se justificaría establecer una distinción en cuanto a la forma de computar el término de suspensión para favorecer al conductor no autorizado.

■ Se imputa como tercer error haber impuesto al apelante una pena tan severa.

*Aunque la pena de seis meses de cárcel está dentro de los límites que fija la ley—de 10 días a un año de cárcel—consideramos que en vista de las circunstancias concurrentes y especialmente de que el accidente en este caso no reviste gravedad alguna, ya que se trata de una leve colisión con un vehículo estacionado en una calle que sufrió como único desperfecto la rotura del cristal de un pequeño farol, se reducirá la dicha pena a 15 días de cárcel y así modificada se confirmará la sentencia apelada.*