EL PUEBLO DE PUERTO RICO, peticionario, *v.* TRIBUNAL SUPERIOR DE PUERTO RICO, SALA DE AGUADILLA, HON. MODESTO VELÁZQUEZ FLORES, JUEZ, demandado.

Número: O-67-2          Resuelto: 28 de junio de 1967

---

*J. B. Fernández Badillo, Procurador General,* e *Irene Curbelo, Procuradora General Auxiliar,* abogados del peticionario.

EL JUEZ ASOCIADO SEÑOR SANTANA BECERRA emitió la opinión del Tribunal.

La acusación del fiscal por infracción al Art. 8, Sec. 5-801 de la Ley de Vehículos y Tránsito imputó a Manuel Velázquez Vélez que el 17 de septiembre de 1965 conducía o hacía funcionar un vehículo de motor por la vía pública bajo los efectos de bebidas embriagantes. Alegó el fiscal "además", que Manuel Velázquez Vélez "se negó a dar una muestra

de sangre u orina para ser analizada y conocerse el porciento de alcohol que tenía en la sangre, por lo que se le ocupó la licencia de conducir vehículos de motor".

En 7 de marzo de 1966 el Tribunal declaró convicto al acusado y le impuso $100 de multa y la suspensión de la licencia por un año, "y además 3 meses adicionales por haberse negado a dar una muestra de sangre u orina". El 10 de marzo de 1966 el Tribunal envió la licencia suspendida al Secretario de Obras Públicas. En 28 de noviembre de 1966 el Tribunal dictó sentencia enmendada disponiendo: "La suspensión de la licencia tiene carácter retroactivo a contar desde la fecha de ocupación o sea desde 17 de septiembre de 1965". A petición del Pueblo de Puerto Rico expedimos *certiorari* para revisar las actuaciones anteriores.

La Sec. 5-802 del Art. 8, Subcapítulo V de la Ley de Vehículos y Tránsito, Ley Núm. 141 de julio 20, 1960, según dicha sección fue enmendada por la Ley Núm. 6 de 30 de abril de 1965, castiga a toda persona convicta de conducir o hacer funcionar un vehículo bajo los efectos de bebidas embriagantes con una multa no menor de $100 por la primera infracción o pena de cárcel por término no mayor de un año o ambas penas. Dispone el inciso (d) de dicha sección que en "primera *convicción, además*" de la penalidad dicha, el Tribunal decretará la suspensión de la licencia de conducir por un período que no podrá ser menor de un año ni mayor de dos años. El Pueblo sostiene que el Tribunal carecía de facultad en ley para disponer la retroactividad del término de suspensión de la licencia a la fecha en que ésta fue ocupada.

■ Tan recientemente como en *Pueblo* v. *Tribunal Superior*, 94 D.P.R. 266 (1967), este Tribunal por voz de su Juez Asociado Señor Hernández Matos dictaminó que la suspensión de la licencia al hallarse culpable a un infractor de conducir bajo los efectos de bebidas embriagantes es parte misma del castigo o pena impuesto y dicha suspensión de licencia debe cumplirse y contarse a partir de la fecha en

que se dicta la sentencia, y no antes. En ese caso citamos el de *Pueblo* v. *Pérez Escobar*, 91 D.P.R. 10 (1964), en donde sostuvimos que era error del Tribunal fijar el comienzo de la suspensión de la licencia al terminar el convicto de cumplir el período de cárcel que se le impusiera, bajo el criterio de que mientras estuviera recluido la suspensión era inoficiosa, y dispusimos que debía contarse desde el fallo.

El año de suspensión de la licencia en el presente caso debía en ley comenzar a extinguirse el día 7 de marzo de 1966 en que se dictó la sentencia, y fue error de derecho de la Sala sentenciadora el decretar dicha suspensión, parte de la pena impuesta, retroactiva a la fecha de la ocupación, en 17 de septiembre de 1965.

En cuanto a la suspensión por tres meses adicionales a la del año, por razón de haberse negado el convicto a someterse a una prueba de sangre u orina, la situación permite otras consideraciones. La Sec. 5-803 del Art. 8 trata de los análisis químicos a ser hechos a los infractores de conducir bajo el efecto de bebidas embriagantes, para los cuales la Ley presume que han dado su consentimiento. En la Sec. 5-804 que le sigue el Legislador dispuso el "Procedimiento que habrá de observarse cuando la persona arrestada se negare a someterse al análisis químico". Esta sección, según fue enmendada por la Ley Núm. 94 de 21 de junio de 1961, estatuye en detalle la acción que debe tomarse cuando la persona rehúsa someterse al análisis químico, [1] y exige la inmediata entrega de la licencia.

█ La misma Sec. 5-804 dispone en su inciso (c) que en el acto del juicio el magistrado deberá disponer la suspensión de la licencia por un término no mayor de 2 años

---

[1] Para el propósito y la intención legislativa de la enmienda de 1961, véase el Informe de la Comisión de lo Jurídico de la Cámara sobre el Proyecto 270, en *Diario de Sesiones* (Cámara) Vol. 14, Tomo 3, mayo 16, 1961, págs. 1250–1251; y discusión en el Senado, mayo 25, 1961, a las págs. 1605–1607.

"cuando determine por la evidencia *que el acusado no estuvo justificado al negarse a someterse al análisis· químico* a que se refiere la Sección anterior, cuando éste fuere el caso." Hay aquí un concepto de suspensión de la licencia diferente al concepto de la suspensión bajo la Sec. 5-802(d). De acuerdo con esta última, no puede haber suspensión si no hay *convicción* de haberse conducido bajo los efectos de bebidas embriagantes y, como ya se ha dicho, la suspensión es parte misma de la pena impuesta. Bajo la Sec. 5-804(c) puede imponerse la suspensión de la licencia aun cuando al acusado se le absolviere del delito de guiar en estado de embriaguez, si el Tribunal concluye por la evidencia que él no estuvo justificado en rehusar someterse al análisis. Por el contrario, si convicto, se le puede exonerar de la suspensión de la licencia por razón de su negativa a someterse al examen si el Tribunal concluyere que la negativa fue justificada.

Ninguna de las dos disposiciones fija la fecha a partir de la cual debe comenzar el término de suspensión. Los fundamentos que hemos expuesto para sostener que la suspensión, cuando forma parte misma de la pena impuesta después de una convicción, no debe tener efecto retroactivo, no obligan necesariamente a igual dictamen, ni se crea una inevitable incompatibilidad entre una cosa y otra, cuando se trata de una suspensión por razón de la negativa a someterse al análisis.

En *Pueblo* v. *Tribunal Superior*, 86 D.P.R. 834 (1962), el Tribunal por voz de su Juez Asociado Señor Belaval sostuvo la validez de la Sec. 5-804(c) ante un fuerte ataque de inconstitucionalidad por razón de que infligía castigo mediante la ocupación inmediata de la licencia por el magistrado cuando aún no se había determinado tras un debido proceso de ley si había existido o no justificación en rehusar someterse al análisis. [2]

---

[2] En *Schmerber* v. *California*, 384 U.S. 757 (1966), se sostuvo la validez constitucional del análisis, por un Tribunal francamente divi-

No obstante, hay un hecho real que puede ser tomado en cuenta desde el punto de vista de la discreción judicial, cual es, que un acusado que hubiese rehusado someterse al análisis sufre de inmediato la privación de su derecho a conducir, aun cuando al celebrársele juicio—y la experiencia demuestra que los vaivenes del proceso pueden requerir un tiempo prolongado—pudiera resultar por la evidencia que la negativa fue justificada y, aun más, que no cometió el delito de conducir ebrio. En tal caso, nada resarciría al acusado de la suspensión pendiente el proceso.

▮ Ante la situación descrita, que si bien hemos dicho que no es inconstitucional podría no obstante ser onerosa y, en ausencia de disposición de ley en contrario, cae dentro de una sana discreción judicial disponer en casos apropiados que la suspensión de la licencia, *por razón de la negativa sin justificación a someterse a examen,* se cuente desde la fecha de la ocupación de la misma por tal motivo. Este criterio en nada altera nuestros dictámenes anteriores negando tal discreción cuando se trata de la suspensión por razón de la culpabilidad del acusado en la comisión del delito.

*La sentencia dictada en 7 de marzo de 1966 en tanto dispuso la suspensión de la licencia por un año a partir del 17 de septiembre de 1965, es ilegal. La suspensión de la licencia por tal concepto debe contarse desde el 7 de marzo de 1966. En cuanto a la suspensión por el período adicional de 3 meses por la negativa a someterse a análisis, en su función inherente de hacer justicia, la Sala sentenciadora pudo discrecionalmente disponer que la misma contara a partir de la ocupación de la licencia por tal motivo.* (³)

---

dido 5 a 4. El Juez Sr. Clark formó parte de los 5. Aun así, la mayoría extiende al análisis la garantía constitucional contra registros irrazonables.

(³) Como cuestión de realidad, el acusado lleva 20 meses de suspensión de su licencia, desde el 17 de septiembre de 1965. Partiendo del 7 de marzo, 1966, lleva 12 meses.

El Juez Asociado Señor Blanco Lugo emitió un voto separado en el cual concurren los Jueces Asociados Señores Dávila y Ramírez Bages y, parcialmente en cuanto a que el recurso se ha convertido en académico, el Juez Asociado Señor Pérez Pimentel.

—O—

Voto separado del Juez Asociado Señor Blanco Lugo, con el cual concurren los Jueces Asociados Señores Dávila y Ramírez Bages, y parcialmente, en cuanto a que el recurso se ha convertido en académico, el Juez Asociado Señor Pérez Pimentel

San Juan, Puerto Rico, a 28 de junio de 1967

Según las constancias de los autos el tribunal recurrido dictó sentencia en 7 de marzo de 1966 condenando al acusado por el delito de conducir un vehículo de motor bajo la influencia de bebidas embriagantes al pago de una multa de $100 y le suspendió la licencia de conductor por el término de un año. Además, decretó una suspensión de tres meses por haberse negado el acusado a dar una de las muestras a que se refiere la ley para practicar el correspondiente análisis. La multa fue prontamente satisfecha. El 28 de noviembre de 1966 el juez a quo enmendó la sentencia dispondiendo que "la suspensión de licencia tiene carácter retroactivo a contar desde la fecha de ocupación o sea desde 17 de septiembre de 1965".

1. Convengo con el Procurador General en que, independientemente de lo resuelto en *Pueblo v. Pérez Escobar*, 91 D.P.R. 10 (1964), conforme a la Regla 185 de Procedimiento Criminal, (1) el tribunal carecía de facultad para modificar

---

(1) "(a) *Sentencia ilegal; redacción de la sentencia.* El tribunal sentenciador podrá corregir una sentencia ilegal en cualquier momento. Asimismo podrá, por causa justificada y en bien de la justicia, rebajar una sentencia dentro de los noventa días de haber sido dictada, siempre que la misma no estuviere pendiente en apelación, o dentro de los sesenta días después de haberse recibido en mandato confirmando la sentencia o deses-

la sentencia dictada en 7 de marzo de 1966 por haber transcurrido más de 90 días desde la fecha en que se dictó. Véase, Sentencia de 27 de enero de 1967 en *Pueblo* v. *Tribunal Superior y Vélez, Interventor*, C-66-121.

2. En cuanto a la suspensión por tres meses adicionales por razón de la negativa a suministrar la muestra, que *propiamente no forma parte de la sentencia en la acción criminal*, no encuentro base alguna en la ley que permita la actuación del tribunal. En *Pueblo* v. *Otero Valle*, 89 D.P.R. 73 (1963), dijimos:

"Como resultado del estudio legislativo, y para el propósito anunciado de reconciliar el interés de la comunidad y garantizar los derechos del ciudadano contra posibles excesos en la aplicación de la ley, se aprobó la Ley Núm. 95 de 29 de junio de 1954 (Leyes, pág. 993), cuya principal innovación consistió en introducir el sistema de exámenes químicos para determinar el grado de intoxicación alcohólica de los conductores. Proveyó el procedimiento para la toma de las muestras, determinó el efecto probatorio del resultado de los exámenes, y ante la posibilidad de la negativa de un detenido a someterse al examen requerídole, dispuso:

'7. Si dicha persona una vez haya sido arrestada y subsiguientemente requerida a someterse a dicho análisis químico, rehusare someterse al mismo, el análisis no le será hecho. El oficial del orden público que practicó el arresto llevará a la persona arrestada ante un Magistrado quien, después de investigar el caso y de oir, bajo juramento, al oficial del orden público, a la persona arrestada y a cualquier otra persona interesada, ordenará si existiere causa probable, que se radique la correspondiente denuncia o acusación ante el Tribunal de Primera Instancia contra la persona arrestada.'

---

timando la apelación o de haberse recibido una orden denegando una solicitud de certiorari.

"(b) *Errores de forma*. Errores de forma en las sentencias, órdenes u otros documentos de los autos, y errores en el expediente que surjan por inadvertencia u omisión podrán corregirse por el tribunal en cualquier momento, y luego de notificarse a las partes, si el tribunal estimare necesaria dicha notificación."

Se estableció además un procedimiento administrativo para la suspensión por el Secretario de Obras Públicas de la licencia de aquellos conductores que se negaren a someterse al análisis químico. Este procedimiento se iniciaba con la remisión por el magistrado al Secretario de Obras Públicas de copia de las declaraciones juradas prestadas, y éste, 'basándose en las declaraciones juradas prestadas ante el Magistrado, suspenderá la licencia o permiso de conductor de la persona arrestada . . . .' El perjudicado podía solicitar una vista dentro de sesenta días para determinar si había estado justificado al rehusar someterse a examen.

Al aprobarse la actual Ley de Vehículos y Tránsito de 1960 (Ley Núm. 141 de 20 de julio de 1960) se conservó sustancialmente el procedimiento que había de observarse cuando la persona arrestada se negare a someterse al análisis químico. Véase al efecto la Sec. 5-804 (9 L.P.R.A. sec. 1044). Los cambios principales introducidos consistieron en: a) especificar el contenido de las declaraciones juradas del agente del orden público que practica la detención o del agente a cargo inmediato, del puesto o zona donde se efectúa el arresto, con particular énfasis en el hecho del requerimiento al detenido para que se someta al análisis, su negativa y el apercibimiento a éste de las consecuencias de su negativa (suspensión o cancelación de la licencia) ; b) disponer que se entregará copia de las declaraciones juradas al detenido, a su requerimiento; y c) *eliminar el procedimiento ante el Secretario de Obras Públicas para la suspensión de la licencia con motivo de la negativa a someterse a examen y traslado de esta facultad al tribunal que entiende en la infracción por conducir un vehículo de motor en estado de embriaguez.* En cuanto a este último particular es conveniente consignar que el proyecto que finalmente se convirtió en la Ley 141 (Sustituto al P. del S. 304) disponía en su Sec. 5-805 el procedimiento administrativo para la suspensión de la licencia cuando el conductor se negaba a someterse a examen; y que en términos generales, era muy similar al anteriormente establecido en 1954. Así permaneció el proyecto hasta que en las postrimerías de la discusión en la Cámara de Representantes en 22 de junio de 1960 se propuso la eliminación de *la vista administrativa ante el Secretario de Obras Públicas y su traslado al tribunal que interviniera en la infracción. Diario de Sesiones,* 1960, pág. 2227.

Claramente se deduce que se trata de procedimientos paralelos, separados; uno, de la competencia exclusiva de la esfera judicial, para cuya disposición se requiere el cumplimiento de las disposiciones sobre el encausamiento criminal; y el otro, de naturaleza puramente administrativa, que no se inicia mediante la presentación de la acusación. En *Pueblo* v. *Tribunal Superior*, 86 D.P.R. 834 (1962), dijimos: 'Se trata de dos situaciones de hecho distintas que deben ser establecidas con hechos diferentes; la primera se refiere a la comisión de un delito público; la segunda a la disposición administrativa de una licencia otorgada por el Estado.' "

Según expuesto se trata de un procedimiento de naturaleza puramente administrativa al cual no le es aplicable ninguna disposición que autoriza a los tribunales a enmendar sus "sentencias". Además, como en el presente caso lo que se enmendó fue la "sentencia" la determinación sobre retroactividad sólo podía referirse al término de un año que formaba parte de la condena.

Finalmente, advierto que la cuestión se ha tornado académica, pues aunque se deduzcan las suspensiones de la licencia desde que se decretaran en marzo 7 de 1966, ya a esta fecha han transcurrido tanto la de un año que forma parte de la sentencia en la causa criminal, como la de tres meses en el procedimiento administrativo.

Debe desestimarse el recurso por académico.