EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* VÍCTOR PAGÁN MEDINA, acusado y apelante.

*Número:* CR-70-37  *Resuelto:* 15 de marzo de 1971

*Enrique Miranda Merced, Elizabeth Armstrong de Watlington,* abogados del apelante; *Gilberto Gierbolini, Procurador General, y Bienvenido Vélez Coello, Procurador General Auxiliar,* abogados de El Pueblo.

EL JUEZ ASOCIADO SEÑOR RIGAU emitió la opinión del Tribunal.

Se trata de un caso de escalamiento en primer grado cometido en 18 de febrero de 1967, al hurtarse un automóvil.

Pasadas las vicisitudes que parecen inherentes al proceso judicial, de transcripción de evidencia, cinco prórrogas de treinta días cada una solicitadas por la defensa, y presentación de los alegatos por las partes—el Procurador General presentó el suyo prontamente—nos toca ahora resolverlo. (1)

El apelante fue acusado y convicto de escalamiénto en primer grado cometido en la noche del 18 de febrero de 1967, en la urbanización Vistamar, en Carolina, Puerto Rico. Consistió el escalamiento en penetrar esa noche en la marquesina cerrada con portón y candado de una residencia y en hurtar un vehículo de motor que allí se guardaba, propiedad del residente de dicha casa.

Señala tres errores, los cuales mencionaremos y discutiremos a continuación. El primero consiste en que, en su opinión, la marquesina en cuestión no era susceptible de ser escalada. No tiene razón. La marquesina tiene techo, tiene portón de hierro, el cual estaba cerrado, una de sus paredes la tiene en común con el resto de la residencia, la otra pared hasta arriba es de bloques ornamentales y al fondo hay una verja. Toda la casa tiene verja alrededor.

El Art. 408 del Código Penal, 33 L.P.R.A. sec. 1591, dispone que:

"Toda persona que entrare en una casa, aposento, habitación, casa de vecindad, taller, almacén, tienda, granero, establo, dependencia, u otro edificio, pabellón, embarcación, carro o vagón,

---

(1) En el año fiscal en que se cometió este escalamiento (1966–67) se cometieron en Puerto Rico 18,621 escalamientos—uno cada 28 minutos— y se hurtaron 5,486 automóviles—uno cada 96 minutos. Estas cifras puestas al día son las siguientes: En el año fiscal 1969–70 los escalamientos en Puerto Rico ascendieron a 20,732—uno cada 25 minutos—y los hurtos de automóviles a 6,296—uno cada 60 minutos.—*Datos Estadísticos*, Publicación de la Policía de Puerto Rico, 1969–70, pág. R-3. Para una discusión sobre la incidencia de criminalidad en Puerto Rico, véase Rigau, *Tasa de Criminalidad Comparada*, 28 Rev. C. Abo. P.R. 269 (1968). Véanse también Burger, *Crime and Criminal Law Today*, 28 Rev. C. Abo. P.R. 157 (1967); y el informe *The Challenge of Crime in a Free Society* del President's Commission on Law Enforcement and Administration of Justice (1967).

con el propósito de cometer hurto o ratería, o cualquier delito grave será culpable de escalamiento."

El artículo siguiente del mismo cuerpo legal dispone que constituye escalamiento en primer grado el que se comete de noche y en segundo grado el que se comete de día.

█ La marquesina escalada es parte de la residencia a la cual está físicamente adjunta. La penetración ilegal en ella, rompiendo el candado, y con el propósito de hurtar o de cometer cualquier delito grave constituye escalamiento. Si se comete de noche, constituye escalamiento en primer grado.

Es de conocimiento general que en las marquesinas de los hogares puertorriqueños, por lo cálido de nuestro clima, se convive parte del tiempo. Allí juegan los niños, se sientan a conversar los mayores y de noche allí se guarda propiedad —muebles o vehículos.

Ya en *Pueblo* v. *Cosme Vargas*, 96 D.P.R. 836 (1969), expresamos que en la interpretación de dicho Art. 408 del Código Penal los criterios jurídicos formalistas han sido superados por irreales e inoperantes. La adjudicación contemporánea no se hace a base de preconcepciones arcáicas y dogmáticas sino que, para darle vida y vigencia al derecho, los tribunales recurren a enfoques jurisprudenciales realistas. Esa es la forma de llevar a la adjudicación los elementos de racionalidad y razonabilidad que son indispensables para la formulación correcta de toda norma jurídica. Pound, *Law Finding Through Experience and Reason* (1960), pág. 45 y ss. Como ha escrito Castán:

"Un jurista, para ser verdadero jurista, y no un razonador abstracto, un lógico formalista, no puede separar su ciencia del Derecho, ni de la investigación sociológica del Derecho realmente eficaz y vivo, ni de la investigación filosófica del espíritu y de los principios del Derecho."[2]

---

[2] *Teoría de la Aplicación e Investigación del Derecho* (1947) pág. 36.

Aun bajo el *common law* hace ya un siglo que se considera que se comete escalamiento no sólo al penetrar en la vivienda, sino también en las estructuras externas (*out buildings*) cercanas a ésta, comprendidas en su solar o patio. Estas estructuras externas tradicionalmente incluían establos, graneros y, más recientemente, garages. Perkins, *Criminal Law* (1957), pág. 160. Ciertamente esto incluye hoy las marquesinas, ya estén éstas físicamente contiguas o no, a la vivienda a la cual sirven. Como bien dicen Clark y Marshall, dada la amplia protección contemporánea de la ley a las personas y a la propiedad, el escalamiento considerado solamente una ofensa contra la mera vivienda es ya un anacronismo. *A Treatise on the Law of Crimes*, 6ta. ed. rev. (1958), pág. 870. Véase también *Burglary: Outbuildings or the like as part of dwelling house*, 43 A.L.R.2d 831 y 2 Wharton's *Criminal Law and Procedure*, secs. 424 y 429. Se entiende que así sea. Así como el *common law* no exigía que los caballos, para estar protegidos por la ley, tuviesen que dormir dentro de la casa de su amo, sino que bastaba que estuviesen en el establo, hoy día no se requiere que se guarde el automóvil en la sala; basta que esté en la marquesina. El primer error señalado no se cometió.

Argumenta el apelante en su segundo señalamiento que porque la prueba no demostró una "posesión exclusiva" por su parte, del vehículo hurtado, debemos revocar. Para discutir este error es necesario entrar en la parte pertinente de los hechos.

En la madrugada de 18 de febrero de 1967, el policía Rafael Pérez estaba de servicio de patrulla en la Avenida Campo Rico de Carolina acompañado de otro policía. Notó que venía un vehículo que le estuvo sospechoso porque venía mal conducido y lo mandó a detenerse. En dicho vehículo iban dos hombres. Éstos, en vez de detenerse, trataron de huir y al virar el vehículo en U para escapar, el vehículo se apagó y se detuvo. El policía vio al apelante en el vehículo. Éste y el

otro sujeto que iba en el carro, al éste apagarse, se tiraron del carro y echaron a correr. El policía Pérez logró detener a uno pero el apelante se escapó. A las dos horas ya la policía lo había apresado. El policía declaró que él vio al apelante en el vehículo cuando lo mandó a detener y lo vio huir. Al hacer la investigación de rigor el vehículo aparecía informado a la policía como hurtado de la marquesina de la casa de su dueño.

La posesión por el apelante del vehículo hurtado fue conjunta con el otro individuo que le acompañaba. ¿Quiere esto decir que esa circunstancia de por sí necesariamente lo exonera? No. Aunque usualmente al inferirse la presunción de culpabilidad debido a la posesión por una persona de artículos recientemente robados dicha posesión resulta ser exclusiva, sin embargo, esa circunstancia usual—porque es la que se da en la generalidad de los casos—no es una regla obligatoria. No lo es porque como a veces los hurtos y los escalamientos los cometen dos o más personas actuando de común acuerdo, se reconoce que puede hacerse la misma inferencia de culpabilidad cuando los bienes recientemente hurtados están en posesión de dos o más personas. Un caso normativo y bastante parecido al de autos es el caso de *Flamer* v. *State*, 227 A.2d 123 (1967). En dicho caso, tres individuos iban en un automóvil. La policía persiguió al carro y finalmente le dio alcance. En el automóvil se ocuparon artículos que habían sido hurtados. Dos de los tres acusados se declararon culpables pero no así Flamer. Éste impugnó la proposición de que la posesión conjunta por ellos de los bienes hurtados bastaba para inferir su culpabilidad. Allí el tribunal, a la pág. 127, dijo lo siguiente:

"El requisito de que la posesión debe ser 'exclusiva' para que sea incriminatoria no quiere decir que la posesión tiene que ser separada de otras personas. Una 'posesión exclusiva' puede ser

posesión conjunta entre dos o más personas que hayan actuado o estén actuando de acuerdo." (³)

En otras palabras, la "posesión exclusiva" no quiere decir necesariamente exclusiva de *una* persona, sino exclusiva *de aquellos* que hayan actuado conjuntamente. Si fuese lo contrario, esto es, que los bienes hurtados tienen que estar en la posesión "exclusiva" de un solo individuo para que pueda hacerse la inferencia de culpabilidad, podría darse el caso de que si un hombre hurta un saco de billetes de un banco y lo apresan con el producto del hurto, éso podría servir para hacer la inferencia de culpabilidad pero si dos o tres hombres hurtan diez sacos de billetes y los apresan, entonces no podría hacerse la inferencia de culpabilidad porque la posesión no era "exclusiva" de una persona. Naturalmente esto no es así. Las palabras no son clavos que se meten en los maderos a marronazos sino que son sonidos orales o símbolos escritos de ideas. No pueden pues, utilizarse mecanicistamente sino ejerciendo el raciocinio. (⁴)

De lo anterior surge claramente que el hecho de que la posesión en este caso consistiese de la posesión entre el apelante y el otro individuo que se dio a la fuga no es razón para exonerarlo.

En *Pueblo* v. *Bonilla*, 78 D.P.R. 152, 161 (1955), siguiendo a *Holland* v. *United States*, 348 U.S. 121, caso citado recientemente en *In Re Winship*, 397 U.S. 358, 362 (1970), dijimos:

"Desde ahora, al apreciar la evidencia en un caso criminal—y al instruir al jurado sobre la cuestión—los jueces sentencia-

---

(³) "An 'exclusive possession' may be the joint possession of two or more acting in concert."

(⁴) Para no caer en esos errores conviene hacer lecturas como las siguientes: Pound, *Law Finding Through Experience and Reason*; Castán, *Teoría de la Aplicación e Investigación del Derecho*; Cardozo, *The Nature of the Judicial Process*; Castán, *La Formulación Judicial del Derecho*; Friedmann, *Law in a Changing Society*; Paton, *Jurisprudence*; Llewellyn, *The Bramble Bush*; Pound, *The Spirit of the Common Law*.

dores no deben usar la norma de que para poder justificar la convicción la evidencia circunstancial debe ser inconsistente con cualquier otra hipótesis razonable de inocencia. Por el contrario, según se dijo en el caso de *Holland,* el problema es si la evidencia—bien sea circunstancial o testifical—establece la culpabilidad del acusado fuera de duda razonable."

Véanse también en igual sentido a *Pueblo* v. *Pérez Escobar,* 91 D.P.R. 10, 14 (1964); *Surrett* v. *United States,* 421 F.2d 403 (1970); *United States* v. *Nelson,* 419 F.2d 1237 (1969); *United States* v. *Lodwick,* 410 F.2d 1202 (1969).

■ Como se sabe, cuando los bienes recientemente hurtados se encuentran en posesión de una persona quien rehúsa explicar dicha posesión o quien da una explicación falsa de la misma, se puede inferir que los hurtó. 2 Wharton's *Criminal Law and Procedure,* sec. 411, pág. 32.

■ Habiendo el policía visto al apelante en el vehículo hurtado en la madrugada de la noche en que dicho carro fue hurtado y habiéndose éste dado a la fuga cuando el policía lo mandó a detenerse, son circunstancias de posesión ilegal, no explicada, de propiedad recientemente hurtada, y de conducta inculpatoria del apelante que justifican la apreciación que de la prueba hizo el juzgador de los hechos. Véanse *Pueblo* v. *Juarbe Albarrán,* 83 D.P.R. 747 (1961) y *Pueblo* v. *Rodríguez,* 91 D.P.R. 157 (1964). No se cometió el segundo error señalado.

■ Como tercer señalamiento expresa el apelante que el elemento de la intención ya había sido litigado y era cosa juzgada porque había sido procesado por hurto de uso en Carolina y salió absuelto. Aparte de que los delitos de escalamiento y hurto de uso son dos delitos distintos y la convicción o absolución por uno de ellos no conlleva necesariamente la absolución o convicción por el otro, el apelante no cumplió con las Reglas 63 y 64(f) de Procedimiento Criminal. La primera dispone que cualquier defensa u objeción susceptible de ser determinada sin entrar en el caso en su fondo se

deberá promover mediante moción presentada al hacerse alegación de no culpable o antes de alegar. La segunda regla antes mencionada dispone que la moción para desestimar la acusación o cualquier cargo de la misma por razón de cosa juzgada, deberá expresar el nombre del tribunal, el título del caso y la fecha y lugar del fallo que se alega que recayó previamente. El apelante no puso al tribunal de instancia en posición de determinar si realmente la controversia había sido anteriormente litigada. *Pueblo* v. *Burgos*, 17 D.P.R. 1156 (1911); *Pueblo* v. *Gillies & Woodward*, 20 D.P.R. 500 (1914); *Pueblo* v. *Rivera*, 23 D.P.R. 377 (1916); *Pueblo* v. *López de Victoria*, 77 D.P.R. 953 (1955); *Pueblo* v. *Pacheco*, 78 D.P.R. 24 (1955).

Terminado el juicio la defensa renunció al término para dictar sentencia y expresó que no solicitaba una sentencia suspendida porque el apelante estaba cumpliendo una sentencia por mutilación. T.E. pág. 23.

*No habiéndose cometido los errores señalados se confirmará la sentencia dictada en este caso.*

El Juez Presidente Interino, Señor Pérez Pimentel, disintió mediante un voto disidente separado.

—O—

Voto Disidente emitido por el Juez Presidente Interino, Señor Pérez Pimentel.

San Juan, Puerto Rico, a 15 de marzo de 1971

Al igual que lo hice en el caso de *Pueblo* v. *Cosme Vargas*, 96 D.P.R. 836 (1969), disiento de aquella parte de la opinión que resuelve que una marquesina, como la que se describe, es una de las estructuras protegidas por el estatuto de escalamiento (Art. 408 del Código Penal). Los fundamentos de este disenso pueden encontrarse en la Moción de Reconsideración presentada por el apelante en el citado caso de *Cosme*

*Vargas,* y a la cual me remito. Concurro con el planteamiento de derecho allí hecho.